**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA WINSTON-SALEM DIVISION**

| | |
|---|---|
| DAVID DUNSON.,<br><br>Plaintiff,<br><br>v.<br><br>City of Winston-Salem, Winston Salem Police Chief William Penn, Officer J.C. Lancaster, JOHN DOE OFFICERS 1-5<br><br>Defendants. | **COMPLAINT**<br>(JURY TRIAL DEMANDED)<br><br>Case No. 1:26-cv-844 |

NOW COMES Plaintiff, David Dunson, by and through undersigned counsel, and bring this Complaint against the Defendants City of Winston-Salem, John Doe Officers 1-5, Chief Penn and Winston-Salem Police Officer J.C. Lancaster (collectively, "Defendants")

**INTRODUCTION**

This is a case about an African American man who has built a long-standing career as a commercial driver both publicly and privately who was driving down an unfamiliar street in Winston-Salem, NC while transporting a passenger through his private rideshare company. A mere turn down the wrong one-way street changed his life in an instant in an unimaginable way when he encountered Winston-Salem police officer J.C. Lancaster, eager to meet a DWI quota. This traffic stop quickly turned violent as he was immediately accused of driving while intoxicated and subjected to two field sobriety tests, two blood tests, and imprisonment on an unfounded, unconstitutional charge which would ultimately be dismissed after a several month's long battle in the courts. His blood test ultimately exonerated him, revealing that he had no substances in his system, as he'd informed the officer of multiple times the day of the initiating incident. This

egregious traffic stop not only caused him to lose his commercial license, rendering him unemployable, but also caused severe anxiety, depression and the loss of his marriage.

**PARTIES**

1) Plaintiff David Dunson (Mr. Dunson) is a 53-year-old African American male and a resident of Winston Salem, North Carolina, with more than thirty years of professional experience as a commercial driver's license (CDL) holder, whose career has been built upon his work in the commercial driving industry.

2) Defendant City of Winston-Salem, (Defendant City") is a municipal corporation organized under the laws of North Carolina and is responsible for the policies, practices, and customs of the Winston-Salem Police Department ("WSPD").

3) Defendant Police Chief William Penn is and was, at all material times herein, the Police Chief of Winston-Salem Police Department; At all relevant times he was acting in the course and scope of his official duties, under color of state law as the Police Chief. In his capacity as Chief, he is and was the final policymaking authority for WSPD, Doe Officers 1-5 and Officer J.C. Lancaster including as it relates to the establishment and maintenance of polices and procedures for WSPD and the training, supervision, and discipline of law enforcement personnel under his command. Chief Penn is being sued in his individual and official capacity.

4) Defendant Officer J. C. Lancaster ("Officer Lancaster") being sued in his official and individual capacity is, upon information and belief, a sworn law enforcement officer employed by or acting under the authority of the WSPD and under color of state law within the course and scope of his duties at all relevant times.

5) Defendants DOEs 1-5 are and/or were agents or employees of WSPD, City of Winston Salem and Chief William Penn acting within the scope of agency or employment under the color of state law. Defendants DOEs 1-5 are sued by fictitious names and their true and correct identities will be substituted when ascertained.

**JURISDICTION**

6) This Court has original jurisdiction over the federal claims pursuant to 28 U.S.C. 28 Section 1331 in that they arise under the United States Constitution and pursuant to 28 U.S.C. Section1343(a)(3), in that the action is brought to address deprivations, under color of state authority, of rights, privileges and immunities secured by the United States Constitution.

7) This Court has supplemental jurisdiction over the state-law claims asserted herein pursuant to 28 U.S.C. Section 1367(a), as those claims arise directly related to, and form the same case and controversy as the federal claims asserted in this action.

8) Venue is proper in the United States District Court for the Middle District of North Carolina pursuant to 28 U.S.C. Section 1391(b) because Defendants are located in the Middle District of North Carolina and because all the acts and/or omissions described herein occurred in the Middle District of North Carolina.

**STATEMENT OF FACTS**

1) Plaintiff David Dunson is the owner of several transportation-based companies and has also been a commercial truck driver for several companies since 1994, a career that has allowed him to be the primary source of income for his family.

2) On July 16, 2025, Plaintiff David Dunson was operating his vehicle as a rideshare driver for his private rideshare company while transporting a passenger.

3) Plaintiff inadvertently turned onto Cherry Street, an unfamiliar roadway, and attempted to execute a U-turn to avoid traveling down the wrong way of a one-way street. At that time, he was stopped by WSPD Officer, Defendant J. Lancaster for allegedly traveling the wrong way on a one-way street.

4) Officer Lancaster approached Plaintiff's vehicle in an aggressive and accusatory manner, alleging that Mr. Dunson was driving while impaired and requesting his driver's license and proof of insurance.

5) Upon Dunson providing Officer Lancaster with the requested documents, Officer Lancaster demanded that he step out of the vehicle at which time Mr. Dunson notified Officer Lancaster of his sprained ankle from a previous injury.

6) In the presence of multiple bystanders, Officer Lancaster conducted a purported Terry frisk of Plaintiff, which exceeded its lawful scope when he reached into Plaintiff's pockets. No contraband or illegal items were found.

7) After the illegal search, Officer Lancaster administered a breathalyzer examination to Mr. Dunson, which indicated a result of 0.00.

8) Once the results revealed no alcohol in Mr. Dunson's system, Officer Lancaster began accusing him of being under the influence of marijuana. Mr. Dunson informed Officer Lancaster that he does not use marijuana.

9) Officer Lancaster falsely accused Mr. Dunson of having a green-like coating on his tongue.

10) Several other Winston Salem Police Officers, including DOE Officers 1-5 arrived and were present as Officer Lancaster ordered Mr. Dunson to do a field sobriety test.

11) Winston Salem Police officers including DOE Officers 1-5 and Officer Lancaster proceeded to conduct a warrantless and unlawful search of Plaintiff's vehicle, which yielded no illegal substances or contraband.

12) Despite lacking probable cause, DOE Officers 1-4 arrested Mr. Dunson, two on each side of his person as if he was a violent criminal.

13) He was charged with driving under the influence and driving the wrong way down a one-way street.

14) Mr. Dunson was then transported to a nearby facility where he was subjected to blood testing.

15) Officer Lancaster drove Mr. Dunson to an unknown location where he once again, forced him to do another round of testing including another field sobriety test and a breathalyzer of which he blew a 0.00 again.

16) Mr. Dunson was subsequently forcefully transported into a jail cell without justification or lawful cause.

17) During Plaintiff's detention and transport, his rideshare passenger remained at the scene in his vehicle.

18) When the passenger he was transporting attempted to exit the vehicle, a Winston Salem Police officer, Officer Doe 5 yelled at her, forcing her to remain in the vehicle.

19) At the police holding center, Mr. Dunson observed that every individual detained alongside him was also African American.

20) Throughout the entire ordeal, Mr. Dunson maintained his composure out of fear of escalation by Winston Salem Police Officers.

21) Mr. Dunson was subsequently released from the jail as the case continued through the standard criminal process.

22) As a result of the DUI charge, Mr. Dunson's commercial driver's license was suspended.

23) For the pending traffic citation, he ultimately pled guilty to a lesser offense of "improper equipment."

24) As a result of the arrest and license suspension, Mr. Dunson was immediately terminated from his commercial trucking positions and suspended from providing services on all rideshare platforms.

25) He was also forced to deal with the gruesome criminal legal system process, an experience he'd never anticipated having to navigate as an upstanding citizen, father and husband.

26) After months of going back and forth to court, on November 11,2025, an Assistant District Attorney entered a voluntary dismissal of the DWI charge stating the following as the reason "no impairing substances found, not enough PC [probable cause] to go forward," noting that "defendant had an alcohol concentration of zero."

27) Mr. Dunson notified Winston Salem Police Sergeant Wray and Lieutenant Azar, two senior officials within WSPD, that Doe Officers 1-5 and Officer Lancaster had violated his constitutional rights. Rather than taking corrective action, these senior officials merely ratified the officers' conduct and refused to put a complaint in any of their files as Mr. Dunson requested.

28) Following this prolonged ordeal, Mr. Dunson began attempting to put his life together by seeking reinstatement of his license and employment.

29) His employment agreement for truck driving services was not reinstated until December 8, 2025, thus he experienced major economic losses as a result of Defendants' actions.

30) As a result of the unlawful arrest, search, seizure, and criminal process Mr. Dunson experienced substantial emotional distress and psychological harm.

31) Additionally, the severe strain on his finances caused unbearable stress on him personally, and on his marriage, as he was the primary bread winner and provider.

32) He endured public scrutiny and embarrassment which adversely impacted his longstanding career and reputation in the trucking industry.

33) He continues to suffer from the devasting mental, emotional, familial and financial strain caused by Defendant's actions.

34) Upon information and belief, Defendant Winston-Salem Police Department has policies, practices, or customs that permit, encourage, or fail to adequately prevent the type of unconstitutional conduct described herein.

35) Despite the fact that black people only make up 31% percent of the population in Winston-Salem, they account for nearly 46% of traffic stops 54% of searches and nearly 67% of WSPD's Use of Force incidents.

36) Additionally, black drivers are 59% more likely to be pulled over in a traffic stop by WSPD than white drivers.

37) During these stops by WSPD, black drivers are 40% more likely to be searched than white drivers, and are more likely to be arrested post stop than white drivers.

38) Upon information and belief, between January 2024 and January 2025 Officer Lancaster made 280 traffic stops, over half of which involved black drivers.

39) Upon information and belief, Defendant City of Winston-Salem and Winston-Salem Police Department have a policy or practice of engaging in pretextual stops, especially involving black drivers for the sake of committing unlawful searches and seizures.

40) Upon information and belief, Defendants have a policy and practice of making warrantless arrests, searches and seizures without probable cause, especially for black individuals.

41) Upon information and belief, Defendants have a policy and practice of falsely prosecuting individuals, particularly black people, without sufficient evidence to do so.

42) Upon information and belief, Defendants City, and Chief Penn maintained, implemented, or permitted policies, practices, or customs that encouraged or incentivized officers to meet predetermined DWI enforcement targets or quotas. These incentives, whether explicit or implicit, created pressure on officers to initiate and pursue DWI arrests and prosecutions without adequate probable cause.

43) As a direct and foreseeable result of these policies and practices, officers were motivated to prioritize arrest statistics over constitutional safeguards, leading to unlawful seizures, arrests, and prosecutions of individuals who were not impaired. Such conduct reflects deliberate indifference to the constitutional rights of citizens, including the rights secured by the Fourth and Fourteenth Amendments.

44) Defendants failed to properly train, supervise and discipline Defendant Officer Lancaster and even rewarded Defendant Lancaster with the DWI per Capita Enforcement award from MADD in 2024.

45) On the night of the incident, it was clear that Officer Lancaster ‘s actions were motivated by his own desires, including to increase his arrest and enforcement statistics, not based on objective reasonable facts.

46) Defendants City of City of Winston-Salem and Chief Penn failed to adequately train, supervise and meaningfully discipline Defendant Doe Officers 1-5 and Defendant Lancaster despite being put on notice that they’d violated an individual’s constitutional rights.

47) Defendant Chief Penn, as the acting Police Chief was a final policy-making authority for Defendants WSPD and the City including as it relates to the training, supervision and discipline of personnel under his command.

48) Upon information and belief, Defendants failed to implement and/or maintain an adequate policy related to 1) the investigation, discipline and remediation of officers who engage in misconduct, including violations of citizens; constitutional rights; 2) the timely and thorough review of use-of-force incidents; (3) the identification and correction of patterns of unconstitutional conduct by officers; and (4) the imposition of meaningful corrective or disciplinary measures sufficient to deter future violations.

## CAUSES OF ACTION

### <u>Count 1: Waiver of Governmental Immunity</u><br><u>(Against Defendant City of Winston-Salem)</u>

49) Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

50) A municipality can be held liable when the unconstitutional action is the result of an official policy or practice that caused the alleged constitutional violation under 42 U.S.C. §1983.

51) Governmental immunity may shield a municipality from liability unless it has waived immunity, such as through the purchase of liability insurance pursuant to N.C. Gen. Stat. §160A-485.

52) Participation in a local government risk pool pursuant to N.C. Gen. Stat §160A-485, shall be deemed to be the purchase of insurance for the purpose of waiving immunity.

53) Upon information and belief, Defendants City and WSPD has purchased or caused the municipality to purchase commercial liability insurance for the 2024-2025 and 2025-2026 fiscal years and thus was waived its governmental immunity.

54) Upon information and belief as alleged herein, Plaintiff's damages exceed the minimum of Defendants excess liability insurance.

**Count 2: Unlawful Search and Seizure**
**Pursuant to U.S. Const. Amend. IV; 42 U.S.C. 1983; NC Const. art. I §20.**
**(Against Defendant DOEs 1-5 and Defendant Lancaster in their individual and official capacity)**

55) Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

56) Defendant DOEs 1-5 and Defendant Lancaster, while acting under color of law, deprived Plaintiff of rights under the Fourth and Fourteenth Amendments to be secure in his person, be free from unlawful searches of his person and vehicle, belongings, and free from false arrests.

57) On July 16, 2025, Defendant Lancaster, an employee of Defendant City and WSPD including violated Plaintiff's rights when the traffic stop exceeded its original scope for a traffic violation, turning into a prolonged detention in violation of the Fourth Amendment and Article I Section 20 of the NC Constitution.

58) This prolonged detention escalated to an unlawful seizure of Plaintiff when Defendant Lancaster ordered him out of his vehicle and ultimately arrested him without probable cause for DWI.

59) Without a search warrant nor consent, WSPD officers including Officer Lancaster exceeded the scope of the Terry frisk when he entered Mr. Dunson's pockets, conducting an illegal search of his person.

60) Without a search warrant nor consent, WSPD officers including Defendant DOEs 1-5 and Officer Lancaster entered into Mr. Dunson's vehicle and conducted an illegal search without probable cause.

61) Without an arrest warrant these officers including Officer Lancaster subjected Mr. Dunson to detention, conducted multiple rounds of field sobriety tests and blood tests, and ultimately falsely charged, arrest and imprisoned him without probable cause.

62) Defendants lacked reasonable suspicion supported by articulable facts that Plaintiff was engaged in criminal conduct when they subjected him to multiple rounds of field sobriety and blood testing.

63) Defendants lacked justification to detain Plaintiff as he did not pose any threat to anyone's safety, was not the suspect of any crime or investigation, and his detention was unnecessarily painful, embarrassing, degrading and prolonged.

64) This degradation only further escalated when he was falsely charged and transported to the local jail for a crime he did not commit.

65) Defendants are liable for the damages hereinbefore alleged in an amount to be determined at trial.

**Count 3: Failure to Train & Supervise-Monell Supervisory Liability**
**Pursuant to U.S. Const. Amend. IV; 42 U.S.C. 1983**
**(Against Defendants City, And Chief Penn in his official capacity)**

66) Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

67) The Fourth Amendment of the United States constitution guarantees the right of the people to be secure in their persons… against unreasonable searches and seizures" and demands that "no Warrants shall issue, but upon probable Cause supported by Oath or affirmation."

68) In violation of Plaintiff's constitutional rights to be free from unreasonable search and seizure, Defendant DOEs 1-5 and Defendant Lancaster were acting on behalf of Defendants City, WSPD and Chief Penn and pursuant to their customs, practices, policies, and/or procedures.

69) At the relevant time, Defendants City, WSPD, and Chief Penn had an unlawful municipal policy of custom of detaining individuals without reasonable suspicion, subjecting individuals to de facto arrests in the absence of probable cause, entering and searching their persons and vehicles without warrants, exigent circumstances, consent or even probably cause, and issuing arrests with warrants and without probable cause.

70) In addition to or in the alternative, City WSPD policymakers ratified WSPD officers repeated unlawful detentions and searches and seizures by failing to take corrective action despite their subjective awareness of a pattern of such constitutional violations.

71) Defendant City policymakers knew to a moral certainty that WSPD officers would regularly be in the position to detail individuals and/or conduct searches of their persons and/or vehicles in which a lack of appropriate policies, procedures, and/or practices would frequently result in WSPD officers abuse of their authority, and in failing to establish and/or maintain such policies, procedures, and or practices, were deliberately indifferent to the constitutional rights of those interacting with the WSPD officers.

72) Defendants City, WSPD, and Chief Penn knew that WSPD officers would regularly be in the position to detain individuals and or conduct searches of their persons and or vehicles yet failed to provide the training necessary to ensure officers would not abuse this authority. In failing to provide the training necessary to prevent WSPD officers from conducting unlawful searches and seizures, Defendants were deliberately indifferent to

the constitutional rights of civilians, and this deliberate indifference caused Defendant Lancasters violations of Plaintiff's rights.

73) As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff has suffered and continues to suffer deprivation of his constitutional rights, loss of liberty, severe emotional distress, psychological harm and humiliation, economic and familial losses, and other damages as detailed herein.

74) Defendants are liable for the damages hereinbefore alleged in an amount to be determined at trial.

**Count 4: Violation of Equal Protection Clause**
**Pursuant to U.S. Const. Amend. XIV; 42 U.S.C. 1983**
**(Against Defendant City, Chief Penn, DOEs 1-5 and Defendant Lancaster in their individual and official capacity)**

75) Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

76) The Fourteenth Amendment Equal Protection Clause prohibits states from denying any person the equal protection of the laws. U.S. Const. Amend. XIV.

77) Defendants Does 1-5 and Defendant Lancaster acted under color of state law when they deprived Plaintiff of his right to Equal Protection under the law.

78) At all relevant times, Mr. Dunson, an African-American man was a member of a protected class.

79) Defendants acted with the intent and purpose to treat Mr. Dunson different than similarly situated persons who are not members of his protected class when they:

a. subjected him to a pretextual stop without reasonable suspicion or probable;

b. aggressively accused of driving while impaired despite exhibiting no objective signs of impairment;

c. subjected to an unlawful Terry frisk that exceeded its lawful scope;

d. subjected to a warrantless vehicle search without probable cause or consent;

e. arrested and charged with DWI despite multiple breathalyzer tests showing 0.00 BAC and no evidence of impairment;

f. detained and prosecuted for months before the charges were dismissed for lack of probable cause Defendants are liable for the damages hereinbefore alleged in an amount to be determined at trial.

80) Similarly situated white drivers in Winston-Salem, NC were not subjected to such treatment.

81) The differential treatment Plaintiff experienced was not based on any legitimate, non-discriminatory law enforcement purpose.

82) Defendants' actions were motivated by discriminatory animus based on Plaintiff's race.

83) Defendants City and Chief Penn maintained, implemented, or permitted policies, practices, or customs that encouraged or facilitated racially discriminatory enforcement, including:

a. engaging in pretextual stops, especially involving Black drivers, for the purpose of conducting unlawful searches and seizures;
b. making warrantless arrests, searches, and seizures without probable cause, especially for Black individuals;
c. falsely prosecuting individuals, particularly Black people, without sufficient evidence;
d. incentivizing officers to meet predetermined DWI enforcement targets or quotas, creating pressure to initiate arrests without adequate probable cause;
e. failing to train, supervise, and discipline officers who engaged in racially discriminatory conduct;
f. failing to identify and correct patterns of unconstitutional, racially disparate conduct by officers.

84) As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff has suffered and continues to suffer deprivation of his constitutional rights, loss of liberty, severe emotional distress, psychological harm and humiliation, economic and familial losses, and other damages as detailed herein.

85) Defendants are liable for the damages hereinbefore alleged in an amount to be determined at trial.

**Count 5: Malicious Prosecution**
**Pursuant to U.S. Const. Amend. IV; 42 U.S.C. 1983**
**(Against Defendants City, Lancaster, And Chief Penn in his official capacity)**

86) Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

87) Defendant Lancaster, acting under color of state law initiated and/or participated in a criminal proceeding against Mr. Dunson for Driving While Impaired (DWI).

88) Defendant Lancaster initiated the criminal proceeding for DWI without probable cause and with malice.

89) This criminal proceeding terminated in Mr. Dunson's favor when the state dismissed the DWI charge for lack of probable cause.

90) As a result of Defendants' actions, Mr. Dunson suffered damages including but not limited to suspension of his commercial driver's license, loss of employment, and extreme mental, relational and financial hardship.

91) Defendants are liable for the damages hereinbefore alleged in an amount to be determined at trial.

**Count 6: False Imprisonment**
**Pursuant to U.S. Const. Amend. IV; 42 U.S.C. 1983**
**(Against Defendants City, DOEs 1-5 Lancaster, and Chief Penn in his official capacity)**

92) Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

93) Defendants acted under color of state law when they intentionally restrained Mr. Dunson without legal justification violating his constitutional right to liberty.

94) Defendant Lancaster falsely arrested and imprisoned him without probable cause.

95) Defendant Lancasters unreasonable conduct was a direct deprivation of Mr. Dunson's constitutional rights.

96) Defendants are liable for the damages hereinbefore alleged in an amount to be determined at trial.

**Count 6: Intentional Infliction of Emotional Distress**
**(Against all Defendants)**

97) Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

98) Defendants Lancaster and DOES 1-5, while acting within the course and scope of their duties as police officers employed by WSPD and The City of Winston-Salem engaged in extreme and outrageous conduct when they subjected Mr. Dunson to several field sobriety tests, blood tests, and falsely charged, arrested, and imprisoned him without probable cause, after he merely made a wrong turn and attempted to turn around in traffic.

99) Defendants acted with intent to cause severe emotional distress or with reckless indifference to the likelihood that his conduct would cause such distress.

100) Defendants conduct caused Mr. Dunson to suffer severe emotional distress including but not limited to chronic depression, nightmares, and severe anxiety.

101) Defendants Lancaster's and DOES 1-5, negligent actions were a direct result of unconstitutional policies, practices and trainings of Defendants City, WSPD and Chief Penn.

102) Defendants City, WSPD, and Chief Penn are liability for damages in an amount to be determined at trial.

**Count 7: Negligent Infliction of Emotional Distress**
**(Against all Defendants)**

103) Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

104) Defendants Lancaster and DOES 1-5 , while acting within the course and scope of their duties as police officers employed by WSPD and The City of Winston-Salem engaged in extreme and outrageous conduct with intent to cause or with reckless disregard for the probability of causing emotional distress, when they unreasonably subjected Mr. Dunson to several field sobriety tests, blood tests, and falsely charged, arrested, and imprisoned him without probable cause for a mere traffic violation.

105) It was reasonably foreseeable that Defendants' conduct would cause Mr. Dunson to suffer from severe emotional distress.

106) Defendant's negligent conduct did in fact cause Mr. Dunson to suffer from severe emotional distress including but not limited to chronic depression, nightmares, and severe anxiety.

107) Defendants' negligent actions were a direct result of unconstitutional policies, practices and trainings of Defendants City, WSPD and Chief Penn.

108) Defendants are liable for damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays the Court award relief as follows:

1) For injunctive relief;
2) For compensatory, general and special damages, treble damages, civil penalties, nominal damages in an amount according to proof at trial;
3) For an award of exemplary/punitive damages against Defendant Penn, Defendant Lancaster and Defendant DOES 1-5, in an amount sufficient to deter and to make an example of them as their actions were motivated by evil motive or intent, involved reckless or callous indifference to constitutionally and statutorily protected rights or were

wantonly or oppressively done and/or constituted oppression and/or malice resulting in great harm;

4) For an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; 42 U.S.C. § 12205 and any other statute as may be applicable;

5) For interest; and

6) For an award of any other further relief, as the Court deems fair, just and equitable.

**JURY DEMAND**

The Plaintiff respectfully demands a jury trial on all issues of fact that may arise from the pleadings.

This is the 18th day of August, 2026.

Respectfully Submitted,

*<u>/s/ Aviance D. Brown</u>*

Aviance D. Brown
North Carolina Bar No. 53400
The Law Office of Aviance D. Brown, PLLC
4033 Village Park Dr. 1105
Knightdale, NC 27545
Tel. (919) 351-2113f
adb@adbrownlaw.com